Filed 8/1/14  P. v. Washington CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>MARCUS EUGENE WASHINGTON,<br><br>     Defendant and Appellant. | E057957<br><br>(Super.Ct.Nos. RIF118561 &<br> RIF140717)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Patrick F. Magers, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed with directions.

Patrick T. Santos for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

Facing a maximum term of over 28 years in prison, defendant and appellant

Marcus Eugene Washington elected to enter an open plea to the court in return for an

indicated sentence of 10 years. He now seeks an opportunity to obtain a still more

favorable result by arguing that he did not receive the effective assistance of counsel

because trial counsel failed to file a statement in mitigation and otherwise failed to argue

for a lesser term. He also argues that the trial court failed to understand that it had

discretion to strike an "out on bail" enhancement (Pen. Code, § 12022.1)[1] which would

have reduced his sentence to eight years. Although we find that most of his attacks on

trial counsel are unwarranted, we agree that the trial court apparently overlooked its

power to strike a two-year "out on bail" enhancement and that trial counsel's failure to

argue for such a result was prejudicial. Accordingly, we will remand for resentencing.

STATEMENT OF FACTS

Defendant was charged with 10 felonies and one misdemeanor, plus multiple

enhancements, arising from four separate incidents.[2] Our statement of facts is taken

from the preliminary hearings.

---

[1] All subsequent statutory references are to the Penal Code unless otherwise specified. All references to Penal Code sections 12021, 12022.1, 12022.5, and 12022.7 are to the former sections which were repealed in 2012.

[2] Defendant was charged with terrorist threats and "force likely" assault on one victim on August 2, 2004; the former charge included a personal use of a deadly weapon enhancement. (§§ 422, 12022, subd. (b).) A second incident on the same day led to the "force likely" assault charge. (§ 245, subdivision (a)(1).) The incident of April 3, 2007, led to charges of burglary with personal firearm use and personal infliction of great bodily injury enhancements (§§ 459, 12022.5, subd. (a), 12022.7, subd. (a)), assault with a firearm with personal use and personal infliction enhancements (§ 245, subd. (a)(2),

*[footnote continued on next page]*

On August 2, 2004, defendant first approached a former coworker at the latter's place of work, threatened to kill him, drew a knife, and repeated the threat after the presence of witnesses apparently dissuaded him from carrying out the threat. Later in the day, possibly after a traffic collision,[3] defendant approached the other driver's car and began punching him through the vehicle window. He then dragged the victim out of the car and continued to punch him and kick him after the victim fell to the ground.

On April 3, 2007, defendant, armed with a shotgun and accompanied by others, burst into a converted garage where several young people had congregated. Defendant racked the gun and struck one young man in the head with his fist, causing the latter to flee. Defendant then approached another youth who had risen to his feet and told him to sit down. Defendant hit this youth in the head with the butt of the shotgun and then in

_[footnote continued from previous page]_
12022.7, 12022.5, subd. (a)), assault with a deadly weapon and by means "force likely," with the same enhancements (§ 245, subd. (a)(1)), and illegal possession of a firearm (§ 12021, subd. (c)(1)). These last four counts all also included an "out on bail" enhancement (§ 12022.1). The final incident, on November 29, 2007, led to two sets of charges brought under sections 140 and 136.1 relating to threats and dissuasion directed at a witness or potential witness. These also included an "out on bail" enhancement. Finally, a misdemeanor assault charge also related to the April 3, 2007 incident.

[3] The evidence introduced at the preliminary hearing does not establish any reason for the assault, but in their trial brief the People asserted that it was a "road rage" matter involving a "right of way dispute."

the side as the victim stumbled.  The victim eventually received three stitches and 21 staples to close his wounds.[4]

Later, in November of 2007, defendant repeatedly drove his car past a residence where the victim and one of the other young people who had been present in the garage were sitting outside and pointed his finger at them as if it were a gun.

After an unreported chambers conference on June 18, 2009, defendant entered a plea of nolo contendere "to the court" and was told by the court that "if you entered a plea of guilty, the Court would impose a term of ten years in state prison."  The matter was referred to probation.

The probation report reflected that defendant had three separate pending misdemeanor matters, ranging from battery to driving under the influence to failure to obey traffic devices.  (§ 243, subd. (e)(1); Veh. Code, § 23152, subds. (a) & (b); Veh. Code, § 21461, subd. (a).)  Defendant also had a substantial history of Vehicle Code offenses between 2004 and 2007, as well as three prior misdemeanor convictions, including one for corporal abuse on a spouse/cohabitant.  (§ 273.5, subd. (a).)

Defendant told the probation officer that he was guilty of some of the charges, but "not others" and attributed his criminal conduct to the suicide of his younger sister; defendant was the one who found her body.  Defendant indicated that he was engaged to

---

[4] Again, the trial brief fills in some of the gaps from the preliminary hearing by indicating that the evidence would show that four males invaded the garage and demanded "weed."

4

be married to the mother of his young child, and that he was employed by a family business doing taxes and selling real estate.

Because the substance of defendant's appeal concerns the sentencing hearing, we leave the proceedings at that time to the discussion below. He asserts that but for trial counsel's unprofessional errors, he would have been sentenced more leniently. His position has merit in one respect, as we will explain.[5]

DISCUSSION

In reviewing a claim of ineffective assistance of counsel, the question to be resolved is twofold: first, did counsel's performance fall below an objective standard of reasonableness in accordance with prevailing professional standards; and second, if it did, was there prejudice—that is, is there a reasonable probability that a more favorable result would have been obtained by competent counsel? (*In re Champion* (2014) 58 Cal.4th 965, 1007, citing *Strickland v. Washington* (1984) 466 U.S. 668, 694.)

_____

[5] Among counsel's alleged derelictions is that "[s]hockingly," he allegedly told defendant's mother that family letters of support would not be helpful. This allegation goes outside the record and cannot be considered on this appeal. (*People v. Williams* (2013) 56 Cal.4th 630, 691; see *Polanski v. Superior Court* (2009) 180 Cal.App.4th 507, 543.) It is also meritless, as defendant must concede that letters *were* submitted and read by the court. Defendant informs us in his brief that his mother "was absolutely furious" when she discovered that the letters had not been submitted, but that "[t]he sentencing judge was kind enough to leave his bench that day and read the letters." This is both outside the record and irrelevant.

5

Defendant's first argument is the general one that counsel failed to present mitigating evidence to the trial court.

As defendant complains, trial counsel did not file a formal statement in mitigation, as allowed by section 1170, subdivision (b), and California Rules of Court, rule 4.437(b).  This omission cannot have prejudiced defendant if the information in any such memorandum was in fact presented to the court.[6]

Defendant's mother described him as "headstrong" and "difficult" in high school, but also told the court how proud she was that he had attended junior college, gone into a forestry program and then the United States Navy, and found "the right path."  She also vividly described how defendant had come home to find his sister "hanging . . . .  He removed her body, took her down" and pinpointed his deterioration from that point as he began to abuse alcohol.  She ended by describing defendant's recent success as he began working in the family business and met his fiancée, telling the court that "for the last three years he has been a joy."

---

[6] Defendant also asserts that trial counsel chose to "remain completely silent at the sentencing hearing."  This is simply not true and gives a wholly misleading impression of an attorney refusing to assist his client in any way.  In fact, trial counsel urged the court to allow defendant's family to speak personally and asked it to reconsider the open plea (i.e., the indicated sentence).  After the family members spoke, counsel told the court that "I understand the position the Court's in," but urged that "of the hundreds of thousands of clients that I've represented, this is one that I would—I got to try.  I can honestly say that I would . . . let Mr. Washington watch my four-year-old kid by himself."  "Your Honor, I'm just asking—you know, whatever that can be done."

Defendant's fiancée asked the court to allow defendant to go free so that he could be a father to his child.

Defendant's sister also told the court that defendant was "devastated" by his sister's death but that she had seen much "growth and maturation" in him and believed that he had "turned a corner." She described him as "a loving and doting father, and he's a wonderful brother. He gave me away at my wedding."

Next was defendant's stepfather, who told the court that defendant had been doing an "outstanding job" as a tax preparer, licensed real estate agent, and loan officer. He told the court that "I could just bring droves and droves of people in here who would say wonderful things about Marcus." He affirmed that the family would always support and assist defendant.

Defendant's points that he had a "baby boy" and was "engaged to be married" were well known to the court, which had delayed sentencing until after the child's expected birth. Defendant complains that counsel did not mention his military service, which was reflected both in the probation report and his family's remarks; the probation report noted that defendant did not receive an honorable discharge, which may well explain counsel's decision not to go into detail in this respect. Defendant also criticizes trial counsel for not presenting an expert to discuss the "physiological [*sic*]" effect of "finding his little sister hanging from a rope deceased." We may doubt that the trial court would have been enthusiastic about entertaining such testimony at a routine

7

sentencing hearing; in any event, defendant does not, and in the context of this appeal cannot, establish that any such testimony would have assisted him.

Finally, in this respect defendant asserts that trial counsel should have explained to the court that he believed that the victims of the attempted robbery had recently burglarized his car. This apparently stems from defendant's statement to the probation officer in which he mentioned the burglary and claimed that he was just driving around the neighborhood looking for "a male Hispanic who lived in the neighborhood of Noblewood" who, according to an acquaintance, had committed the crime. Defendant told the probation officer that he merely approached the youths in the garage to ask if they knew this person.

We fail to see how any reference to this self-exculpatory version—in which defendant did not raise the burglary as a revenge motive, but at least implicitly denied guilt entirely—could have swayed the trial court in defendant's favor.

It is also noteworthy that the support letters submitted to, and read by, the court have not been made part of the appellate record. We would, in any event, decline to assume that any points that defendant alleges were omitted by counsel were not covered in the letters. However, as we have discussed, defendant has failed to show that any of the points he makes, which arguably were not made to the trial court, were likely to have worked in his favor.

B.

Defendant's other primary point of ineffective assistance is more troubling. As noted above, at the time defendant entered his plea the court gave an indicated sentence of 10 years. As defendant points out, an "indicated sentence" is just that—it is not binding on the trial court when defendant enters an open plea. The court is free to modify its tentative decision if new or different facts are shown before sentencing. (*People v. Labora* (2010) 190 Cal.App.4th 907, 915 [Fourth Dist., Div. Two], citing *People v. Woosley* (2010) 184 Cal.App.4th 1136, 1146, disapproved on other grounds.) Thus, the trial court could have imposed more than 10 years, but it could also have imposed less.

Defendant's argument is that the trial court did not realize—and trial counsel did not urge—that it could have stricken an "out on bail" enhancement and thus reduced his sentence by two years. The People concede that striking this enhancement was an available option if the interests of justice would thereby be served. (§ 1385; *People v. Meloney* (2003) 30 Cal.4th 1145, 1155-1156.)

The issue arises because at sentencing the trial court commented "based upon the charges, that [the indicated sentence of 10 years] is the absolute minimum—absolute minimum the Court could give. *So anything less than ten years in state prison . . . would be an illegal sentence. I've got to follow the law . . . .*" (Italics added.) Later, it stated that "[t]he ten-year sentence is based upon giving you the minimum sentence allowable by law for these charges" and after imposing sentence, assured

9

defendant that "you've got the absolute minimum possible time that you could have received . . . ."

These comments are puzzling because, as the People point out, the trial court *did* strike one "out on bail" enhancement in order to get down to 10 years.[7] Thus, it is clear that the trial court *did* understand that it had discretion to strike such an enhancement, but apparently, or possibly, failed to recall that the indicated 10 years also involved a second such enhancement.

The People argue that based on the above analysis, defendant cannot show that counsel's failure to argue for the striking of the *other* "out on bail" enhancement was prejudicial, because the trial court should be presumed to have implicitly determined that 10 years was the appropriate term and should not be further reduced. Had the trial court's comments as quoted above been less explicit—for example, if the trial court had remarked "This is really the least I can give you," perhaps we would have agreed with the construction that what the court really meant was "After evaluating you and the offenses, this is as low as I'm willing to go." But the trial court's references to an "illegal sentence" and "minimum sentence allowable by law" do, in our view, reflect a misconception of its sentencing options.

The People also argue that we should apply the presumption that the trial court was aware of and followed the applicable law. (*People v. Mosley* (1997) 53 Cal.App.4th 489, 496.) As noted, we would willingly do so if the trial court's statements were not so

---

[7] In so doing, the court expressly relied on its authority under section 1385.

clear. Although it is defendant's burden to show that the trial court misunderstood its sentencing discretion (*People v. Davis* (1996) 50 Cal.App.4th 168, 172), that burden has been met here.

It is also true that if there is some indication in the record that the trial court would not have altered its decision even if it realized it had the power to do so, remand would be an idle act and is not required. (*People v. Sanders* (1997) 52 Cal.App.4th 175, 178, disapproved on another ground in *People v. Fuhrman* (1997) 16 Cal.4th 930, 947, fn. 11.) The People list the negative factors weighing against defendant—the violence of the offenses, the fact that he committed multiple crimes on widely spaced occasions, his refusal to take responsibility, and the pendency of other charges. However, as we have discussed, it is clear from the record that the trial court believed it was imposing the lowest sentence it could. It is possible that the court also believed that 10 years was precisely appropriate and that eight years would be insufficient punishment, but on the record before us we are compelled to find a reasonable probability that the trial court would have exercised its discretion to strike the other "out on bail" enhancement had trial counsel reminded it that it could do so.

Accordingly, defendant was prejudiced by trial counsel's failure to argue for the striking of the second enhancement, and remand for resentencing is required.

## DISPOSITION

The judgment of conviction is affirmed.  The matter is remanded for resentencing, at which time the trial court shall determine whether to exercise its discretion to strike the second "out on bail" enhancement.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:


RICHLI

J.


MILLER

J.